# Exhibit 1

DECLARATION OF REEVE TYNDALL
PURSUANT TO 28 U.S.C. § 1746

I, Reeve Tyndall, hereby declare as follows:

1. I have personal knowledge of the matters outlined in this declaration, and, if called as witness, I could and would testify as to the matters stated herein.

2. I am over twenty-one years of age and work as a Senior Investigator for the Federal Trade Commission ("FTC") in the Bureau of Consumer Protection's Division of Marketing Practices. The Division of Marketing Practices investigates persons and entities that may be violating the FTC Act and other laws enforced by the FTC. My work address is 600 Pennsylvania Avenue, NW, Washington, D.C.

3. I have worked at the FTC for 12 years.

4. In September 2019, the Commission initiated a non-public investigation into Nexway, for the purposes of determining if Nexway had engaged in possible violations of Section 5 of the FTC Act and the TSR. The current investigation by the Commission is nationwide in scope, but is being directed and carried on within this judicial district at the FTC's headquarters in Washington, DC.

5. The FTC obtained records about Nexway from the Better Business Bureau of San Francisco and Northern California and the Golden Gate Better Business Bureau. Many of the complaints about Nexway also identified tech support companies. Some of the tech support companies identified in the Nexway Better Business Bureau complaints have been sued by the U.S. Department of Justice ("USDOJ") and the Indian Central Bureau of Investigation (an agency of the Republic of India).

6. For example, Tech Live Connect Pte Ltd, Saburi TLC, and Sensei Ventures, Inc., which collectively did business as Tech Live Connect ("TLC") and Premium Techie Support and its

officer Brian Cotter, were sued by the USDOJ in October 2020. *US v. Michael Brian Cotter, et al.*, Case No. 1:20-CV-24216-RNS (S.D. Fl. Complaint filed 10/15/20) *See* Exhibits ("Ex.") 10, 11, and 12 (Complaint, Consent Decree, and Press release.)

7.  As part of the investigation into Nexway, the FTC served Civil Investigative Demands ("CIDs") on third parties, including WorldPay and Brian Cotter/Sensei Ventures, Inc. on or about August 10, 2020, and January 14, 2021, respectively. Both produced documents to the FTC.

8.  Records produced by WorldPay include an email string with an attached copy of Nexway's Better Business Bureau report. *See* Ex. 13. WorldPay 1-21 - Nexway's Better Business Bureau report states that Nexway services the District of Columbia. *Id* at 9.

9.  Records produced by Brian Cotter/Sensei Ventures included spreadsheets that showed that Nexway had billed consumers in the District of Columbia on behalf of Tech Live Connect.

10.  During the course of the Nexway investigation, I obtained records from the California Secretary of State about Nexway, Inc. They show that Nexway, Inc. is a Delaware Corporation and that it has a business address of 4804 Mission St., Suite 208, San Francisco, California 94112. *See* Ex. 14 at 2 and 1.

11.  On or about July 20, 2020, I visited and captured a copy of Nexway, Inc.'s website – www.nexway.com. Among other things, the Nexway website identified that Nexway, Inc. is a subsidiary of Nexway SAS and that Nexway SAS' principal place of business is in Paris, France. *See* Ex. 15 at 59 and 38.

12.  During the course of the Nexway investigation, I downloaded a copy of Nexway, Inc.'s 2019 half-year report from Nexway's website. The half-year report notes that "[a]t the end of January 2019, Nexway AG (formerly asknet AG), acquired 100% ownership interest in Nexway

Group AG and its 100% owned subsidiary Nexway SAS" and that Nexway AG was publicly traded under the symbol NXWY. *See* Ex. 16 at 2.

13. On or about September 21, 2021, I downloaded a copy of a June 9, 2020 press release announcing that Nexway SAS had separated from Nexway AG. *See* Ex. 17.

14. Based on my review of the records produced by WorldPay, Brian Cotter/Sensei Ventures, and the Better Business Bureaus; the USDOJ's complaint against Cotter and Sensei Ventures; and Nexway's website:

   a. Nexway transacts business throughout the U.S., including in the District of Columbia;

   b. Nexway provided its clients, including telemarketers like Tech Live Connect., processing services and access to the U.S. credit card systems allowing Nexway's clients to charge and obtain money from consumers;

   c. Nexway caused consumers' card information to be submitted into the credit card system through Nexway's own merchant account, collected the payments from consumers throughout the United States, and after taking a fee, transmitted the remaining funds to telemarketers; and

   d. The USDOJ's complaint alleged that the defendants, including Tech Live Connect, were involved in a large-scale technical-support fraud scheme alleged to have "defrauded hundreds of elderly and vulnerable U.S. victims."

### The FTC Sends a CID to Nexway

15. The Commission issued a CID to Nexway on January 28, 2020. As set forth in the CID, the Commission initiated a non-public investigation into Nexway, for the purposes of

3

determining if Nexway had engaged in possible violations of Section 5 of the FTC Act and the TSR. A true and correct copy of the CID is attached as Ex. 18.

16. The CID stated that the FTC was investigating persons to determine whether there were violations of Section 5 of the FTC Act and the Telemarketing Sales Rule including (1) the assisting and facilitating provision of the TSR and (2) the credit card laundering prohibition of the TSR. *Id.* at 6.

17. The CID described the specific nature of the FTC's investigation and the law at issue, which is to investigate whether Nexway or other persons or entities have engaged in deceptive or unfair practices in violation of the FTC Act, 15 U.S.C. Section 45 by credit card laundering, assisting or facilitating violations of the TSR, 16 C.F.R. Part 310, or by making a false or misleading statement to induce any person to pay for goods or services. *Id.* at 6.

18. The CID identified me as the records custodians to whom any responses were to be sent, and provided an address to where to produce the documents. The CID was signed by a Commissioner acting pursuant to Commission Resolution Number 1923239, which authorizes the use of compulsory process to among other things, determining whether a person or entity has engaged in unfair or deceptive practices by providing substantial assistance. *Id.* at 3.

19. The CID instructed Nexway to provide a privilege log when making privilege assertions. The CID also notified Nexway that failure to make privilege claims may result in a waiver of the privilege.

> Specifically, the CID to Nexway included the following instruction:
>> **Withholding Requested Material/ Privilege Claims:** For specifications requesting production of Documents, if You withhold from production any material responsive to this CID based on a claim of privilege, work product protection, statutory exemption, or any similar claim, You must assert the claim no later than the return date of this CID, and You must submit a detailed log, in a searchable electronic format, of the items withheld that identifies the basis for withholding the material and meets all the requirements set forth in 16 C.F.R. §

    2.11(a)- (c). The information in the log must be of sufficient detail to enable FTC staff to assess the validity of the claim for each Document, including attachments, without disclosing the protected information. If only some portion of any responsive material is privileged, You must submit all non-privileged portions of the material. Otherwise, produce all responsive information and material without redaction. 16 C.F.R. § 2.11 (c). The failure to provide information sufficient to support a claim of protected status may result in denial of the claim. 16 C.F.R. § 2.11 (a)(l). (*Id.* at 11.)

20. The FTC served the CID on Nexway on February 3, 2020. The CID was delivered to Nexway's principal office via U.S. Mail, return receipt requested. Ex. 19 (U.S. Mail return receipt).

21. Nexway subsequently produced documents electronically, on a rolling basis, in March, May and June 2020. Nexway's production was loaded into Relativity. Relativity is an eDiscovery tool.

22. Nexway counsel is Moses & Singer, LLP, a large law firm that advertises that it advises eDiscovery companies.

23. Nexway did not provide a privilege log with its productions, or otherwise identify any privileged documents. Nexway did not file a petition to quash or limit the CID.

24. Nexway's productions were accompanied by cover letters that included language stating that it reserved the right to claim privilege and to claw back any inadvertently produced documents.

25. On or about March 29, 2021, I visited LinkedIn.com and downloaded the page for Oliver von Kroog. Mr. Von Kroog is a juriste for Nexway. Mr. Von Kroog has been a juriste for Nexway since May 2017. He is in Nime, France. Ex. 20 is a true and correct copy of the Linkedin page.

26. Mr. Von Kroog is an employee of Nexway. Using Relativity, I searched Nexway's production and reviewed a document that evidences Mr. Von Kroog was in charge of Legal for Nexway. *See* Ex. 21.

27. On or about March 29, 2021, I looked up Mr. Von Kroog on the California Bar website located here: *members.calbar.ca.gov/fal/LicenseeSearch/QuickSearch*. I did not find any record of Mr. Von Kroog of ever being licensed to practice law in California.

28. On or about March 29, 2021, I looked up Mr. Von Kroog on the Martindale-Avvo website located here: *martindale.com/find-attorneys/*. Martindale-Avvo aggregates attorney records from state bar associations and other public databases. I did not find any record of Mr. Von Kroog of ever being licensed to practice law in the United States.

29. On or about October 20, 2021, I went to the ZoomInfo and Bloomberg Market websites and printed copies of the corporate information for two companies, The Native SA and Lighthouse Capital, Ltd. *See* Ex. 22 and 23 respectively. They appear to be separate corporations from Nexway.

I state under penalty of perjury that the foregoing statement is true and correct.

Executed on November 10, 2021, in Washington, DC.

*Reeve Tyndall*
Reeve Tyndall