# Exhibit 2

**DECLARATION OF J. RONALD BROOKE, JR.**

**Pursuant to 28 U.S.C. § 1746**

I, J. Ronald Brooke Jr., hereby state that I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify as follows:

1. I am a United States citizen and I am over twenty-one years of age. I work as an attorney for the Federal Trade Commission ("FTC") in the Bureau of Consumer Protection's Division of Marketing Practices. The Division of Marketing Practices investigates persons and entities that may be violating the FTC Act and other laws enforced by the FTC.

2. The following declaration recounts events related to Nexway, Inc.'s ("Nexway") response to the Commission's civil investigative demand issued to it on January 28, 2020 ("CID") as part of an FTC non public inquiry.

3. The Commission issued a CID to Nexway on January 28, 2020.

4. On or about February 19, 2020, FTC staff had a call with counsel for Nexway, Howard Fischer, of Moses & Singer LLP. The main purpose of the call was to discuss Nexway's request for an extension of time for Nexway to make its production and responses to the CID.

5. Nexway counsel memorialized the call in a letter dated February 20, 2020, sent to the FTC via email. *See* Ex. 24. Nexway's February 20, 2020 letter notes that one of the reasons for the extension is because "after the materials has been assembled and collated, counsel will still need to review it for final determinations as to responsiveness and privilege." *Id*. at 2.

6. Nexway's requested extension on production was granted. *See* Ex. 25 (February 20, 2020 Letter from FTC).

**The Commission Sends Nexway Two Letters Pursuant to 16 C.F.R. § 4.10(g)**

7. The FTC served Nexway, through counsel, with two notices, pursuant to 16 C.F.R. § 4.10(g), informing Nexway that the Commission would be disclosing documents that Nexway

1

produced to witnesses in investigation hearings or to the public, and telling Nexway that it could seek a protective order.

8. The first letter sent by the FTC on June 18, 2020, informed Nexway that it had "the right to seek a protective order that would prohibit the Commission from publicly disclosing the submitted information" and requested that Nexway notify the FTC if Nexway intended to seek a protective order. *See* Ex. 26.

9. Nexway did not seek a protective order in response to the June 18, 2020 letter. Instead, Nexway responded in a June 19, 2020 email from counsel stating that:

> Nexway has no objection and does not plan to move for a protective order with respect to any materials that might be shown to Professor Nick Nikiforakis at any interview or hearing, to the extent those materials do not include either (i) inadvertently produced privileged material, which should be returned (and we agree that materials sent to third parties that merely mention counsel are not likely to be privileged) and (ii) sensitive economic data about Nexway operations, such as P&L information, pricing data, trade secrets, or similar such data, whose disclosure might put Nexway at a competitive disadvantage. *See* Ex. 27.

10. In its June 19, 2020 email, Nexway <u>did not</u> identify any particular documents as inadvertently produced or covered by the attorney-client privilege, nor did Nexway identify any additional counsel.

11. On January 4, 2021, the Commission sent Nexway a second letter notifying Nexway that pursuant to 16 C.F.R. § 4.10(g), the FTC was providing it with notice that the documents produced in response to the CID issued to Nexway "may be publicly disclosed." *See* Ex. 28. The January 4 letter informed Nexway that it had "the right to seek a protective order that would prohibit the Commission from publicly disclosing the submitted information" and requested that Nexway notify the FTC if it intended to seek a protective order. *Id*.

12. Nexway's counsel scheduled a call with FTC counsel in response to the January 4 letter. During the call, FTC counsel confirmed that the FTC planned to use documents produced by

Nexway in an investigational hearing. Nexway counsel stated that they were going to speak with their client and "will advise if we anticipate seeking any protective order."

13.   Nexway did not seek a protective order.

### Nexway Makes Claims of Privilege

14.   On December 17, 2020, the FTC sent Nexway a letter asking questions about a small group of financial documents produced by Nexway in response to the CID, including document bates numbered 7247 that included information about invoices. Months later, on March 5, 2021, Nexway responded via a letter, which: (1) responded to a number of the questions in the December 17, 2020 letter, and (2) for the first time, claimed that one document—bates number 7247—was covered by the attorney-client privilege. *See* Ex. 29.

15.   In particular, counsel for Nexway said the 7247 was protected by attorney-client privilege because it was provided to Oliver Von Kroog, Nexway/asknet counsel, to obtain legal advice. Nexway counsel claimed that 7247 had been inadvertently produced and requested that the FTC return the document and purge it from FTC document retention systems. *Id*. at 10.

16.   Before this, Nexway had never claimed that any document that it had produced in response to the CID was privileged.

17.   Nexway's March 5, 2021 letter did not include any other information to support a claim that the document Bates Number 7247 was covered by the attorney-client privilege. Nor did Nexway include a privilege log with the March 5, 2021 letter.

18.   On March 9, 2021, the FTC responded via letter requesting that Nexway provide the Commission with the information required by the CID to support a privilege claim. *See* Ex. 30.

19.   On April 19, 2021, Nexway sent a letter in response to the FTC's March 9, 2021 letter: (1) again claiming that the document bates number 7247 was privileged; and (2) further

requesting that the FTC return any documents, including correspondence, between Nexway and Oliver Von Kroog (who they claimed was considered an attorney by Nexway) that Nexway may have inadvertently produced.  *See* Ex. 31.

20. Nexway's April 19, 2021 response did not (1) identify any other document besides document bates number 7247 or (2) include a privilege log.

21. The FTC responded to Nexway by letter on April 27, 2021 ("April 27 letter").  Ex. 32. In the April 27 letter, the FTC noted that Nexway's April 19, 2021 request concerning correspondence with Mr. Von Kroog was vague and overbroad, and failed to identify the documents for which Nexway claimed a privilege and why.  Specifically, the FTC noted that besides document bates number 7247, Nexway had "not identified any documents as being inadvertently produced" and that Nexway's reference to hypothetically privileged documents did not suffice as identification. *Id*. at 3.

22. Furthermore, the April 27 letter pointed out that "neither your correspondence nor our inquiry" established or provided any evidence that Oliver Von Kroog is a member of a bar, a requirement for any attorney-client privilege claim to apply to any documents sent to him.  *Id*. at 2.

23. The FTC's April 27 letter additionally noted that:  (1) the FTC could find no evidence that Mr. Von Kroog was a licensed attorney in the U.S.; (2) Mr. Von Kroog, on his public LinkedIn page, identified himself as a "Legal Advisor/Juriste" and in-house employee of Nexway; and (3) in France, a juriste is not a member of a bar.  *Id*. at 2-3.

24. The April 27 letter concluded that the attorney-client privilege would not apply to communications with Mr. Von Kroog under both U.S. and French law, citing to case law holding that the attorney-client privilege did not apply to communications with someone unless they

were a member of the bar. *Id*. at 3. Additionally, the April 27 letter noted that Nexway had failed to (1) produce a privilege log or (2) comply with the instructions set forth in the CID related to withholding a document on the basis of privilege. *Id*. at 3. The FTC also informed Nexway that, while the status of the document bates number 7247 was in dispute, the FTC would sequester the document as permitted by 16 C.F.R. § 2.11(d)(1)(ii)(B). *Id*. at 3.

25. FTC counsel concluded the April 27 letter by (1) noting that it was Nexway's burden to search for and identify documents for which it claimed privilege; and (2) requesting that Nexway fully comply with the CID instruction and produce a log and identify what privileged documents it claimed to have inadvertently produced within 14 days. *Id*. at 4.

26. On May 4, 2021, FTC staff and Nexway counsel had a conference call. During that call, FTC staff indicated to Nexway counsel that staff was in the process of preparing a draft of a proposed Complaint that relied on numerous documents produced by Nexway in response to the CID. FTC staff requested that Nexway identify any documents to which they would claim privilege.

27. Instead, Nexway counsel suggested that (1) the FTC provide Nexway with a list of documents FTC staff intended to rely on so that Nexway could identify which documents Nexway now claimed to be privileged; or (2) FTC staff provide Nexway with a copy of the draft proposed Complaint so that Nexway could identify which sections relied on documents Nexway now claimed to be privileged.

28. FTC staff rejected these offers and that same day sent a follow up email reiterating the requests in the April 27 letter that Nexway: (1) comply with the requirements of the CID; (2) identify any documents Nexway claimed were privileged; (3) prove that Mr. Von Kroog is a

member of the bar; and (4) establish all of the elements of the attorney-client privilege claim for any document within 14 days of April 27, 2021. *See* Ex. 33.

29. On May 11, 2021, Nexway responded via an email. Ex. 34. Among other things, Nexway counsel stated in the email that they would not specifically identify any inadvertently disclosed documents. Nexway counsel stated:

> You are requesting that we engage on what is likely to be a herculean task (review thousands of pages of documents in an attempt to identify which documents, if any, were inadvertently produced), rather than simply listing those documents you intend to rely on in preparation of your Complaint.... *Id*. at 1.

30. Nexway did not produce a privilege log, nor did it ever produce any evidence that Mr. Von Kroog had ever been a member of a bar in the U.S. or France.

31. For more than seven months, the FTC searched and reviewed the documents produced by Nexway in response to the CID. The FTC also used documents produced by Nexway in investigatory hearings, which involve showing documents to and asking questions of a witness during the course of an investigation, all of which are recorded by a court reporter. The FTC conducted its search and review, and investigational hearings, prior to Nexway identifying even a single specific document as privileged.

32. More than a year after the FTC issued the CID and Nexway produced documents, Nexway claimed that an unknown number of documents were privileged and inadvertently produced and demanded their return, yet it still has not produced a privilege log

33. As of today, Nexway has still not identified any document other than 7247 as privileged, or produced a privilege log.

## FTC Staff Sequester Documents

34. FTC staff, out of an abundance of caution and with only Nexway's vague references, proactively requested that FTC litigation support search for and sequester communications Mr. Von Kroog received or sent, and attachments to those communications.

35. This sequestration is broader than would be required by any claim of attorney-client privilege offered by Nexway, since, for example, the search did not exclude documents shared with other companies. For example, some of the communications with Mr. Von Kroog also went to individuals at Native SA and Lighthouse Capital, Ltd. email accounts.

36. Nexway's vague privilege claims and refusal to identify with specificity potentially privileged documents, resulting in the FTC's sequestration of documents out of an abundance of caution, have significantly impeded the FTC's ongoing investigation and is contrary to the public interest.

I state under penalty of perjury that the foregoing statement is true and correct.

Executed on _November 15_, 2021, in Washington, DC.

/s/ _[signature]_
J. Ronald Brooke, Jr.