UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington DC 20580

Petitioner,

v.

Nexway, Inc.
4804 Mission Street, Suite 208,
San Francisco, California 94112

Respondent.

Case No. _____

**MEMORANDUM IN SUPPORT OF THE PETITION TO ENFORCE THE CIVIL INVESTIGATIVE DEMAND**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 4

II.   BACKGROUND ................................................................................................. 6

  A.   Nexway's Business Activities ...................................................................... 6

  B.   The CID ........................................................................................................ 7

  C.   Nexway's Repeated Failure To Claim Privilege; Complete Failure to Provide A Privilege Log, and Its Late, Vague and Unsupported Claim ................................. 8

  D.   The FTC Informs Nexway That Its Privilege Claims are Deficient and Not in Compliance with the CID ............................................................................................. 12

  E.   Nexway Refuses to Search For and Identify Potentially Privileged Documents ....... 13

III.  THE STANDARD FOR ENFORCEMENT HAS BEEN MET ....................................... 15

  A.   The CID is Within the Commission's Authority, Was Issued in Accordance With Procedure, Seeks Relevant Information, and is Neither Overbroad Nor Unduly Burdensome ...................................................................................................................15

  1.   The CID Is Within The Commission's Authority And Was Properly Issued According To All Administrative Prerequisites ................................................................. 16

  2.   The Responsive Documents and Information Are Reasonably Relevant to the

Commission's Investigation........................................................................................ 17

    3.    Compliance with the Subpoena Is Not Unduly Burdensome ..................................... 19

IV.    NEXWAY HAS WAIVED PRIVILEGE ........................................................... 20

V.    NEXWAY'S PRIVILEGE CLAIM IS INVALID ........................................... 23

    1.    Choice of Law ............................................................................................... 23

    2.    No Privilege Under U.S. Law or French Law ............................................ 25

    a.    Mr. Von Kroog is Not a Member of a Bar .................................................. 25

    b.    Nexway Has Not and Cannot Show a Reasonable Belief that the Communications are Privileged Under US or French Law ..................................................................... 28

VI.    ALTERNATIVELY, THE COURT SHOULD ORDER NEXWAY TO PROMPTLY PRODUCE A PRIVILEGE LOG AND SET UP A SCHEDULE TO DETERMINE WHETHER THE PRIVILEGE APPLIES TO ANY DOCUMENTS ........................................................... 31

VII.    CONCLUSION................................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Akzo Chemicals Ltd v. European Commission,* Case C-550/07-P (European Court of Justice Sept. 14, 2010) ........................................................................................................... 30

*Anwar v. Fairfield Greenwich Ltd.*, 30 F.R.D. 117, 120, 2013 US Dist. Lexis 96721 * 26 (S.D.N.Y. July 2013) ............................................................................................... 34

*Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 265-68 (S.D.N.Y. 2013)................. 33

*Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 65, 39 Fed. R. Serv. 2d 1262 (D.D.C. 1984) ................................................................................. 26

*Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 32 F. Supp. 3d 35, 44 (D.D.C. 2014)....................................... 22

*Endicott Johnson v. Perkins,* 317 U.S. 501, 509 (1943) ............................................................ 16

*Federal Trade Commission v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) ......................................................................................................... 36

*Financial Tech, Int'l v. Smith,* 2000 U.S. Dist. Lexis 18220, *19-20 (S.D.N.Y. Dec. 19, 2000)  34

*FTC v. Anderson*, 631 F.2d 741, 744-45 (D.C. Cir. 1979) ......................................................... 16

*FTC v. Capital City Mort. Corp.*, 1998 U.S. Dist. Lexis 22115, *7 (D.D.C. July 13, 1998) ....... 21

*FTC v. Carter*, 636 F.2d 781, 787-88 (D.C. Cir. 1980) ................................................................ 16

*FTC v. Invention Submission Corp.*, 1991 U.S. Dist. LEXIS 5523 at *5 (D.D.C. Feb. 14, 1991)19

*FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) .............................. 16

*FTC v. MacArthur*, 532 F.2d 1135, 1141-42 (D.C. Cir. 1976) ...................................................... 17

*FTC v. Rockefeller*, 591 F.2d 182, 190 (2d. Cir. 1979) ................................................................ 21

*FTC v. Ross*, 743 F.3d 886, 892-93 (4th Cir. 2014) .................................................................... 20

*FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (en banc) ...................................... 16

*Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992) ........................ 25

*Gucci America, Inc. v. Guess?, Inc., et al.*, 2011 US Dist. Lexis 15 (S.D.N.Y Jan. 3, 2011) ...... 31

*Honeywell, Inc. v. Minolta Camera Co.,* 1990 US Dist. Lexis 5954 (D.N.J. May 15, 1990) ...... 29

*In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377 at 394 ........................................................ 27

*In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 391 (D.D.C. 1978) .................................... 26

*In re Ch*evron F. Supp. 2d 170, 180-186 (S.D.N.Y 2010)…..……………………..…...……... 24

*In re Subpoena Duces Tecum* 439 F. 3d 740, 750 (D.C. Cir 2006)……………….…………..25

*In re Sealed Case* 737 F.2d 94, 98-99 (D.C. Cir. 1984) .............................................................. 28

*Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566, *9 (S.D.N.Y. 2002).................... 27

*Louis Vuitton Mallier v. Dooney & Burke, Inc.* 2006 U.S. Dist. Lexis 87096, 2006 WL 3476735
    *56-59 (S.D.N.Y. Nov. 30, 2006) ............................................................................................ 29

*Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 98-99 (2d Cir. 2020) ...................................... 26

*Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005) ............................................................ 36

*Odone v. Croda Intern. PLC*, 950 F. Supp. 10, 13 (D.D.C. 1997) .............................................. 26

*Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946) ............................................ 16

*Reckitt Benchser Pharms. v. Reddy's Labs*, 2016 U.S. Dist. Lexis 201592 *6-11 (D. Del. 2016)
    ...................................................................................................................................................... 29

*Teleglobe Communs. Corp. v. BSE, Inc.,* 493 F.3d 345, 361 (3rd Cir. 2007) .............................. 37

*U.S. v. Philip Morris*, 2004 U.S. Dist. Lexis 27026 *15 (D.D.C. 2004) ...................................... 37

*United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 189 n.13 (D.D.C. 2014) .... 36

*Un*ited States v. Exxon Corp., 628 F.2d 70, 77 n.7 (D.C. Cir. 1980) ............................................ 17

*United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) ...................... 17

*United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) .................................................. 16

*United States. v. United Shoe*, 89 F. Supp. 357, 358 (D. Mass 1950) ........................................ 28

*VLT Corp v. Unitrode Corp.*, 194 F.R.D. 8, 16 (D. Mass. 2000) .................................................. 27

*Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48 (D.D.C. 2011) ................................... 22

*Wultz v. Bank of China*, 979 F. Supp. 2d 479, 496 (S.D. N.Y. Oct. 25, 2013) ............................ 29


**STATUTES**

15 U.S.C. § 57b-1(c) ............................................................................................................ 18

15 U.S.C. §§ 57b-1(e) ........................................................................................................... 15

16 C.F .R. § 2.11 (c) ............................................................................................................... 8

16 C.F .R. § 2.11(a)(1)(x) ....................................................................................................... 8

16 C.F.R. § 2.1 l(a)- (c) .......................................................................................................... 7

16 C.F.R. § 2.11(d)(1)(i) ........................................................................................................ 22

16 C.F.R. § 2.11(d)(1)(ii)(B) .................................................................................................. 13

16 C.F.R. § 4.10(g) ................................................................................................................. 9

Fed. R. Civ. P. 81(a)(5) .......................................................................................................... 6

Fed. R. Evid. 502(b) ............................................................................................................... 22

Section 20 of the Federal Trade Commission Act ................................................................. 6

Section 5 of the FTC Act, 15 U.S.C. § 45 ............................................................................. 4

Telemarketing Sales Rule, 16 C.F.R. Part 310 ..................................................................... 4

# I.    INTRODUCTION

The Federal Trade Commission issued a Civil Investigative Demand ("CID") to Nexway, Inc. on January 28, 2020, as part of a nonpublic inquiry to determine if the company was violating Section 5 of the FTC Act, 15 U.S.C. § 45 and the Telemarketing Sales Rule, 16 C.F.R. Part 310 ("TSR"), by assisting and facilitating telemarketers engaged in deceptive or abusive practices and laundering their charges. Nexway produced documents; however, Nexway did not and has not produced a privilege log or otherwise identified any documents as privileged. The

CID clearly required Nexway to produce a log if it claimed any documents were privileged.

Over a year after being served with the CID and after the FTC had reviewed and used the documents as part of its investigation, Nexway first claimed that a single document—a spreadsheet listing invoice information without any names on it—was "protected by attorney-client privilege." When the FTC asked Nexway to provide the basis for the privilege claim, Nexway responded by claiming that all documentation, including correspondence, between Nexway and "attorney" Oliver Von Kroog, were privileged. It did not provide a privilege log, or even identify the documents at issue. It simply made a blanket claim of attorney-client privilege. Moreover, Mr. Von Kroog is not even an attorney. He is instead a juriste in France, which is someone who has studied law in a college or university, but has not gone to law school or become a member of a bar. There is no privilege for communications with him under United States or French law. He is not a member of a bar, and therefore the attorney-client privilege does not apply to communications with him under United States law. Similarly, the attorney-client privilege in France only applies to an attorney, or avocat.

Nexway's effort to claw back and withhold documents based on a faulty privilege claim has hindered the FTC's investigation. The FTC therefore requests that the Court rule that: (1) Nexway has waived any right to assert the privilege related to any communications with or documents provided to Mr. Von Kroog it produced in response to the FTC's CID, because it is too late and Nexway did not take reasonable steps to prevent or rectify the inadvertent disclosure; and (2) even if not waived, no attorney-client privilege applies to Nexway's communications with Mr. Von Kroog, as he is not an attorney in the U.S. or France. The Court has authority to grant the requested relief to obtain full compliance with the FTC's CID pursuant to Section 20 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 57b-1 and Fed. R.

Civ. P. 81(a)(5).

Alternatively, the FTC requests that the Court order Nexway to: (1) produce to the FTC a complete and thorough privilege log that complies with the CID and FTC Rule 2.11; and (2) enter an expedited briefing schedule regarding the validity of any Nexway privilege claims so that the FTC has an opportunity to challenge Nexway's claims as a whole and on a document-by-document basis, with *in camera* review of the documents, if necessary.

## II.    BACKGROUND

### A.    Nexway's Business Activities

Nexway Inc. is part of a multinational company.[1]  Nexway provided its clients, including telemarketers, processing services and access to the U.S. credit card system, thus allowing Nexway's clients to charge and obtain money from consumers.[2]  Nexway caused consumers' card information to be submitted into the credit card system through Nexway's own merchant account, collected the payments from consumers throughout the United States, and after taking a fee, transmitted the remaining funds to telemarketers.[3]  One or more of these telemarketers engaged in a tech support scam falsely representing that consumers had security or performance issues with their computers.[4]

---

[1]  Ex. 1 Declaration of FTC Investigator Reeve Tyndall ("Tyndall") at ¶¶ 10-11.  Nexway, Inc. was a subsidiary of public company Nexway AG, and is currently a subsidiary of Nexway SAS. For ease of reference, unless otherwise noted, "Nexway" will collectively refer to Nexway, Inc., Nexway SAS and Nexway AG.

[2] Tyndall at ¶ 14.

[3] *Id*.

[4] *Id*. at ¶¶ 6, 14.

### B.    The CID

In September 2019, the Commission initiated a non-public investigation into Nexway, for the purposes of determining if Nexway had engaged in possible violations of Section 5 of the FTC Act and the TSR.[5]  The Commission issued a CID to Nexway on January 28, 2020.[6]  The CID stated that the FTC was investigating persons to determine whether there were violations of Section 5 of the FTC Act and the Telemarketing Sales Rule including (1) the assisting and facilitating provision of the TSR and (2) the credit card laundering prohibition of the TSR. Nexway's business practices were and are a subject of the investigation.[7]

The CID instructed Nexway to provide a privilege log when making privilege assertions.[8] The CID also notified Nexway that failure to make privilege claims may result in a waiver of the privilege.[9]

Specifically, the CID to Nexway included the following instruction:

**Withholding Requested Material/ Privilege Claims:** For specifications requesting production of Documents, if You withhold from production any material responsive to this CID based on a claim of privilege, work product protection, statutory exemption, or any similar claim, You must assert the claim no later than the return date of this CID, and You must submit a detailed log, in a searchable electronic format, of the items withheld that identifies the basis for withholding the material and meets all the requirements set forth in 16 C.F.R. § 2.11(a)- (c). The information in the log must be of sufficient detail to enable FTC staff to assess the validity of the claim for each Document, including attachments, without disclosing the protected information. If only some portion of any responsive material is privileged, you must submit all non-privileged portions of the material. Otherwise, produce all responsive information and material without redaction. 16 C.F.R. § 2.11 (c). The failure to provide information sufficient to support a claim of protected status may result in denial of the claim. 16 C.F.R. § 2.ll (a)(l).[10]

---

[5] *Id*. at ¶ 4.

[6] *Id*. at ¶ 15.

[7] *Id*. at ¶¶ 16-17.

[8] *Id*. at ¶ 19.

[9] *Id*.

[10] *Id*.

Commission Rule 2.11 lists ten categories of required information that should be part of the log, including the following: "The factual basis supporting the claim that the material is protected (for example, that it was prepared by an attorney rendering legal advice to a client in a confidential communication)." 16 C.F .R. § 2.11(a)(1)(x)

More than a year after the FTC issued the CID and Nexway produced documents, Nexway claimed that an unknown number of documents were privileged and inadvertently produced and demanded their return, yet it still has not produced a privilege log.[11]  And, it refuses even to review the documents it produced to identify the supposedly privileged documents in question.[12]

### C.    Nexway's Repeated Failure To Claim Privilege; Complete Failure to Provide A Privilege Log, and Its Late, Vague and Unsupported Claim

The FTC served the CID on Nexway on February 3, 2020.[13]  Nexway, through counsel— Howard Fischer of Moses & Singer LLP—requested an extension on production, which the Commission granted.[14]  Nexway subsequently produced documents electronically, in a Relativity ready format,[15] on a rolling basis, in March, May and June 2020.[16]  In total, Nexway produced approximately 8210 documents (this includes emails, attachments, contracts, and spreadsheets).[17]  Nexway did not provide a privilege log with its productions, or otherwise

---

[11] Ex. 1, Tyndall at ¶ 15, Ex. 2 Declaration of FTC Attorney J. Ronald Brooke, Jr. ("Brooke") at ¶¶ 31-32.
[12] Ex. 2 Brooke at ¶¶ 29, 30.  The FTC itself identified and has sequestered a set of purportedly privileged documents, as described in more detail below.  Id. at ¶¶ 33-35.  The FTC Act and the Federal Rules of Civil Procedure provide authority to sequester documents.  16 C.F.R. § 2.11(d)(1)(ii)(B); Fed. R. Civ. P. 26(b)(5)(B).
[13] Ex. 1 Tyndall at ¶ 20.
[14] Ex. 2 Brooke at ¶¶ 4-6.
[15] Ex. 4 Declaration of FTC Litigation Support Specialist Gerwyn Baldwin ("Baldwin") at ¶ 5.
[16] Ex. 1 Tyndall at ¶ 21.
[17] Ex. 4 Baldwin at ¶ 6.

identify any privileged documents.[18]  It did include boilerplate language in its cover letters that it

reserved the right to claim privilege and to claw back any inadvertently produced documents.[19]

 For more than seven months, the FTC searched and reviewed the documents produced by

Nexway.[20]  The FTC also used documents produced by Nexway in investigatory hearings, which

involve showing documents to and asking questions of a witness during the course of an

investigation, all of which are recorded by a court reporter.[21]  The FTC conducted its search and

review, and investigational hearings prior to Nexway identifying even a single document as

privileged.   The search, review and investigational hearings were conducted as part of the

ongoing investigation, and as part of the FTC's statutory duty to protect consumers from unfair

and deceptive practices.

 The FTC served Nexway with two notices, pursuant to 16 C.F.R. § 4.10(g), informing the

company that it would be disclosing documents that Nexway produced to witnesses in

investigation hearings or to the public, and telling Nexway that it could seek a protective order.[22]

The first letter sent on June 18, 2020, informed Nexway that it had "the right to seek a protective

order that would prohibit the Commission from publicly disclosing the submitted information"

and requested that Nexway notify the FTC if Nexway intended to seek a protective order.[23]

Nexway did not seek a protective order and instead responded in a June 19, 2020 email from

counsel stating that:

> Nexway has no objection and does not plan to move for a protective order with
> respect to any materials that might be shown to Professor Nick Nikiforakis at any

---

[18] Ex. 1 Tyndall at ¶ 23.

[19] *Id*. at ¶ 24.

[20] Ex. 2 Brooke at 31.

[21] *Id*.

[22] *Id*. at ¶ 7.

[23] *Id*. at ¶ 8.

> interview or hearing, to the extent those materials do not include either (i)
> inadvertently produced privileged material, which should be returned (and we
> agree that materials sent to third parties that merely mention counsel are not likely
> to be privileged) and (ii) sensitive economic data about Nexway operations, such
> as P&L information, pricing data, trade secrets, or similar such data, whose
> disclosure might put Nexway at a competitive disadvantage.[24]

Nexway did not identify any particular documents as inadvertently produced or covered by the

attorney-client privilege, nor did Nexway identify any additional counsel.[25]

On December 17, 2020, the FTC sent Nexway a letter asking questions about a small

group of financial documents, including document bates numbered 7247 that included

information about invoices.[26]

On January 4, 2021, the Commission sent Nexway a second letter notifying Nexway that

pursuant to 16 C.F.R. § 4.10(g), the FTC was providing it with notice that the documents

produced in response to the CID issued to Nexway "may be publicly disclosed."[27]  The January

4 letter informed Nexway that it had "the right to seek a protective order that would prohibit the

Commission from publicly disclosing the submitted information" and requested that Nexway

notify the FTC if it intended to seek a protective order.[28]

Nexway's counsel scheduled a call with FTC counsel in response to the January 4

letter.[29]  During the call, FTC counsel confirmed that the FTC planned to use documents

produced by Nexway in an investigational hearing.[30]  Nexway counsel stated that they were

---

[24] *Id*. at ¶ 9; Ex. 27 p. 2.
[25] Ex. 2 Brooke at ¶ 10.
[26] *Id*. at ¶ 14.
[27] *Id*. at ¶ 11.
[28] *Id*.
[29] *Id*. at ¶ 12.
[30] *Id*.

going to speak with their client and "will advise if we anticipate seeking any protective order."[31] Nexway did not seek a protective order.[32]

      Months later, on March 5, 2021, Nexway sent the FTC a letter, which responded to a number of the questions in the December 17, 2020 letter and, for the first time, claimed that one document – 7247 – was covered by the attorney-client privilege.[33]  Before this, Nexway had never claimed that any document was privileged.[34]  In particular, counsel for Nexway said the 7247 was protected by attorney-client privilege because it was provided to Oliver Von Kroog, Nexway/asknet counsel, to obtain legal advice.[35]  Nexway counsel claimed that 7247 had been inadvertently produced and requested that the FTC return the document and purge it from FTC document retention systems.[36]

      Nexway's March 5, 2021 letter did not include any other information to support a claim that the document bates number 7247 was covered by the attorney-client privilege.[37]  Nor did Nexway include a privilege log with the March 5, 2021 letter.[38]  On March 9, 2021, the FTC responded via letter requesting that Nexway provide the Commission with the information required by the CID to support a privilege claim.[39]

      On April 19, 2021, Nexway sent a letter in response to the FTC's March 9, 2021 letter:  (1) again claiming that the document bates number 7247 was privileged; and (2) further

---

[31] *Id*.

[32] *Id*. at ¶ 13.

[33] *Id*. at ¶¶ 14-15.

[34] *Id*. at ¶ 15.

[35] *Id*.

[36] *Id*.

[37] *Id*. at ¶ 17.

[38] *Id*.

[39] *Id*. at ¶ 18.

11

requesting that the FTC return any documents, including correspondence, between Nexway and Oliver Von Kroog that Nexway may have inadvertently produced.[40]  Nexway's April 19, 2021 response did not (1) identify any other document besides document bates number 7247 or (2) include a privilege log.[41]

### D.    The FTC Informs Nexway That Its Privilege Claims are Deficient and Not in Compliance with the CID

The FTC responded to Nexway by letter on April 27, 2021 ("April 27 letter").[42]  In the April 27 letter, the FTC noted that Nexway's April 19, 2021 request concerning correspondence with Mr. Von Kroog was vague and overbroad, and failed to identify the documents for which Nexway claimed a privilege and why.[43]  Specifically, the April 27 letter noted that Nexway had "not identified any documents as being inadvertently produced."[44]

Furthermore, the April 27 letter pointed out that "neither your correspondence nor our inquiry" established or provided any evidence that Oliver Von Kroog is a member of a bar, a requirement for any attorney-client privilege claim to apply to any documents sent to him.[45] The April 27 letter noted that:  (1) the FTC could find no evidence that Mr. Von Kroog was a licensed attorney in the U.S.; (2) on his public LinkedIn page, Mr. Von Kroog identified himself as a "Legal Advisor/Juriste" and in-house employee of Nexway; and (3) in France, a juriste is not a member of a bar.[46]  Therefore, the April 27 letter concluded that the attorney-client privilege would not apply to communications with Mr. Von Kroog under both U.S. and French

---

[40] *Id*. at ¶ 19; Ex. 31April 19, 2021 Letter from Nexway p. 4.
[41] Ex. 2 Brooke at ¶ 20.
[42] *Id*. at ¶ 21.
[43] *Id*.
[44] *Id*.
[45] *Id*. at ¶ 22.
[46] *Id*. at ¶ 23.

law, citing to case law holding that the attorney-client privilege did not apply to communications with someone unless they were a member of the bar.[47]  Additionally, the April 27 letter noted that Nexway had failed to (1) produce a privilege log or (2) comply with the instructions set forth in the CID related to withholding a document on the basis of privilege.[48] The FTC also informed Nexway that, while the status of the document bates number 7247 was in dispute, the FTC would sequester the document as permitted by 16 C.F.R. § 2.11(d)(1)(ii)(B).[49]

FTC counsel concluded the April 27 letter by (1) noting that it was Nexway's burden to search for and identify documents for which it claimed privilege; and (2) requesting that Nexway fully comply with the CID instruction and produce a log and identify what privileged documents it claimed to have inadvertently produced within 14 days.[50]

### E.     Nexway Refuses to Search For and Identify Potentially Privileged Documents

On May 4, 2021, FTC staff and Nexway counsel had a conference call.[51]  During that call, FTC staff indicated that they were in the process of preparing a draft of a proposed Complaint that relied on numerous documents produced by Nexway.[52]  FTC staff requested that Nexway identify any documents to which they would claim privilege.[53]  Instead, Nexway counsel suggested that (1) the FTC provide Nexway with a list of documents FTC staff intended to rely on so that Nexway could identify which documents Nexway now claimed to be

---

[47] *Id*. at ¶ 24.
[48] *Id*.
[49] *Id*.
[50] *Id*. at ¶ 25.
[51] *Id*. at ¶ 26.
[52] *Id*.
[53] *Id*.

privileged; or (2) FTC staff provide Nexway with a copy of the draft proposed Complaint so that Nexway could identify which sections relied on documents Nexway now claimed to be privileged.[54]  FTC staff rejected these offers and that same day sent a follow up email reiterating the requests in the April 27 letter that Nexway: (1) comply with the requirements of the CID; (2) identify any documents Nexway claimed were privileged; (3) prove that Mr. Von Kroog is a member of the bar; and (4) establish all of the elements of the attorney-client privilege claim for any document within 14 days of April 27, 2021.[55]

On May 11, 2021, Nexway responded:

> You are requesting that we engage on what is likely to be a herculean task (review thousands of pages of documents in an attempt to identify which documents, if any, were inadvertently produced), rather than simply listing those documents you intend to rely on in preparation of your Complaint....[56]

Nexway did not produce a privilege log, nor did it ever produce any evidence that Mr. Von Kroog had ever been a member of a bar in the U.S. or France.[57]  The FTC now requests that this court take action to dispense with Nexway's faulty privilege claim, so that the FTC may continue unimpeded to use these documents to conclude its investigation.  These documents are directly relevant to the FTC's investigation, the CID requiring their production is proper, and

---

[54] *Id*. at ¶ 27.

[55] *Id*. at ¶ 28; Ex. 33 May 4, 2021 Email from the FTC pgs 5-6.

[56] Ex. 2 Brooke at ¶ 29.

[57] *Id*. at ¶ 30.  In its email, Nexway counsel claimed that reviewing the documents and identifying those that were privileged would be a "herculean effort," yet, (1) Nexway produced documents in a format that allows them to easily be loaded into a searchable document management system, like Relativity (*See* Ex. 4 Baldwin at ¶¶ 5 and 9); (2) Nexway counsel is Moses & Singer, LLP, a large law firm that advertises that it advises eDiscovery companies; (*See* Ex. 1 Tyndall at ¶ 22); (3) Nexway counsel has the ability to directly speak with its client, Nexway, to identify documents they believe were created on the advice of counsel; and (4) Nexway should have been able to easily perform a search for documents sent to Mr. Von Kroog's Nexway email address using most e-Discovery tools prior to or after their Production (*See* Ex. 4 Baldwin at ¶ 9).

there is no valid claim of privilege.

### III.    THE STANDARD FOR ENFORCEMENT HAS BEEN MET

### A.    The CID is Within the Commission's Authority, Was Issued in Accordance With Procedure, Seeks Relevant Information, and is Neither Overbroad Nor Unduly Burdensome

When "any person fails to comply with any civil investigative demand duly served upon him[,]" the Commission "may file . . . a petition for an order of [a U.S. district] court for . . . enforcement[.]" 15 U.S.C. §§ 57b-1(e).[58]

The standards for the judicial enforcement of administrative compulsory process have long been settled in this Circuit: "[T]he court's role in a proceeding to enforce an administrative subpoena is a strictly limited one."   FTC v. Texaco, Inc., 555 F.2d 862, 871- 72 (D.C. Cir. 1977 (en banc)(citing *Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943)); *see also Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946);*United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) And, "while the court's function is neither minor nor ministerial, the scope of issues which may be litigated in an enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity." *Texaco* 555 F.2d at 872 (quoting *Oklahoma Press Publ'g*, 327 U.S. at 217 n.57);

---

[58] Sections 20(e) and (h) of the FTC Act, 15 U.S.C. §§57b-1(e) and (h), respectively authorize the Commission to seek district court orders to enforce its CIDs in any jurisdiction in which the recipient of a CID "resides, is found, or transacts business" and district courts to enter such orders.  Nexway transacts business in the District of Columbia.[58]  Additionally, the current investigation by the Commission's lawyers is nationwide in scope, but is being directed and carried on within this judicial district at the FTC's offices in Washington, D.C.[58]  Venue is proper in the District of Columbia, which is the location of the investigating office.  *See NLRB v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1202 (D.C. Cir. 2006) (holding that location of investigating office "may well be the most reasonable [venue] choice for purposes of subpoena enforcement"); *United States Intern. Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 249 (D.C. Cir. 2005).

*accord FTC v. Anderson*, 631 F.2d 741, 744-45 (D.C. Cir. 1979).

Thus, a district court must enforce agency investigative process so long as "the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant." *See Texaco*, 555 F.2d at 872 (quoting *Morton Salt*, 338 U.S. at 652). In making this determination, the agency's own appraisal of relevancy must be accepted so long as it is not "obviously wrong." *FTC v. Invention Submission* Corp., 965 F.2d 1086, 1089 (D.C. Cir. 1992) (citing *FTC v. Carter*, 636 F.2d 781, 787-88 (D.C. Cir. 1980)). Furthermore, proceedings to enforce administrative investigative subpoenas and CIDs are entitled to summary disposition. They are special statutory matters cognizable under Fed. R. Civ. P. 81(a)(5), and are properly instituted by a petition and order to show cause (rather than by complaint and summons). *See*, *e.g.*, *FTC v. MacArthur*, 532 F.2d 1135, 1141-42 (D.C. Cir. 1976). And, they are summary in nature: "discovery is improper in a summary subpoena enforcement proceeding." *Carter*, 636 F.2d at 789 (quoting *United States v. Exxon Corp.*, 628 F.2d 70, 77 n.7 (D.C. Cir. 1980)); *accord Invention Submission*, 965 F.2d at 1091.

The three "critical questions" in a summary CID enforcement petition are: (1) the agency's authority to issue a CID, (2) the agency's adherence to proper procedure in issuing the CID, and (3) the relevance of the information sought by the CID. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012). As shown below, the Commission satisfies these three factors. Additionally, the CID is neither overbroad nor unduly burdensome.

> **1.    The CID Is Within The Commission's Authority And Was Properly Issued According To All Administrative Prerequisites**

Nexway has not disputed that the CID is within the Commission's authority. The FTC lawfully issued the CID as part of an investigation into whether Nexway is violating Section 5 of

the FTC Act, and the Telemarketing Sales Rule, statutes the FTC enforces.  In so doing, the

Commission acted under a valid agency resolution authorizes the use of compulsory process to,

among other things, determining whether a person or entity has engaged in unfair or deceptive

practices by providing substantial assistance.[59]

The Commission properly issued the CID pursuant to Section 20(c) of the FTC Act,

15 U.S.C. § 57c-1, which authorizes the Commission to issue civil investigative demands:

> [w]henever the Commission has reason to believe that any person may be in
> possession, custody, or control of any documentary material or tangible things, or
> may have any information, relevant to unfair or deceptive acts or practices in or
> affecting commerce….

The Commission followed all procedures required by the FTC Act and its implementing

rules when it issued the CID.  *See* Ex. 1 Tyndall at ¶ 6. ; 15 U.S.C. § 57b-1(c) (requirements for

form, content, and service of civil investigative demands); *accord* 16 C.F.R. § 2.7 (2001).  The

Commission properly served the CID by delivery to Nexway's principal office on February 3,

2020.[60]

### 2.    The Responsive Documents and Information Are Reasonably Relevant to the Commission's Investigation

The standard for judging relevancy in an investigatory proceeding is more relaxed than in

an adjudication.  In an investigatory proceeding, the Commission merely seeks to learn whether

there is reason to believe that the law is being violated and, if so, whether issuance of a

complaint would be in the public interest.  *See Texaco*, 555 F.2d at 872.  The requested materials,

therefore, need only be relevant to the investigation—the boundary of which may be defined by

---

[59] Ex. 1 Tyndall at ¶ 18.
[60] *Id.* at ¶ 20.

the agency quite generally.  *See Carter*, 636 F.2d at 787-88; *Texaco*, 555 F.2d at 874 & n.26.

Indeed, "a court must respect the agency's 'power of inquisition' and interpret relevance

broadly." *FTC v. Invention Submission Corp.*, 1991 U.S. Dist. LEXIS 5523 at *5 (D.D.C. Feb.

14, 1991) (quoting *Morton Salt*, 338 U.S. at 642), *aff'd*, 965 F.2d 1086.  As the D.C. Circuit has

explained, "in the pre-complaint stage, an investigating agency is under no obligation to

propound a narrowly focused theory of a possible future case."  *Texaco*, 555 F.2d at 874.

　　　The information sought is reasonably relevant to determine whether Nexway (1) violated

Section 5 of the FTC Act by engaging in the unfair practice of submitting credit card charges

through its own account for an entity that made false statements to consumers,[61] and (2) violated

Section 5 and the TSR by (a) assisting and facilitating telemarketers' deceptive practices, and (b)

engaging in credit card laundering.  For example, the CID included documents requests 4[62] and

---

[61]  An act or practice is unfair in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n), if the practice(1) causes or is likely to cause substantial injury to consumers that (2) consumers cannot reasonably avoid themselves and that (3) is not outweighed by countervailing benefits to consumers or competition.  The Commission has previously alleged that submitting credit card charges through your own merchant account for deceptive tech support telemarketing scams is unfair in a case filed in this district against RevenueWire and its chief executive officer.  *FTC v. RevenueWire, et al.,* Civ. No. 1:20-cv-01032 (D.D.C. complaint filed April 21, 2020, Settlement filed April 29, 2020).

[62]  *See* Ex. 18 January 28, 2020, Civil Investigative Demand to Nexway at 2-3:
Document Request 4:  All Documents related to the Tech Support Merchants that the Company or Nexway AG has in its possession, custody or control, including the following:
　　　A  Contracts;
　　　B.  Consumer complaints;
　　　C.  Lawsuits by the Federal Trade Commission or State Attorneys Generals;
　　　D.  Advertising, pop ups, or telephone., sales or marketing scripts;
　　　E.  Policies, procedures, and scripts of responses to consumers who contest or complain about charges. or seek refunds;
　　　F.  Chargebacks, Chargeback Rates, Refunds and Refund Rates;
　　　G.  Due diligence review. investigation, monitoring or any warning or disciplinary action;
　　　H.  Communications, including letters or emails from Visa, MasterCard, Pay Pal, any bank, and any payment processor;
　　　I.  Recordings of test calls made by the Company, Nexway AG, or any other Person,

18

11-14[63] that are relevant to determining Nexway's and its officers' knowledge of telemarketers' deceptive practices.  Knowledge or conscious avoidance of knowledge is an element of proving a violation of the assisting and facilitating prohibition in the TSR.  16 CFR § 310.3(b).

Moreover, officers of companies can be held individually liable for monetary relief.  An individual is liable for monetary relief under the FTC Act if he had actual knowledge, was recklessly indifferent, or had an awareness of a high probability of unlawful activity and intentionally avoided learning the truth *FTC v. Ross*, 743 F.3d 886, 892-93 (4th Cir. 2014) (adopting the test used by other federal appellate courts, including the First, Seventh, Ninth, Tenth, and Eleventh Circuits); *FTC v. Capital City Mort. Corp*., 1998 U.S. Dist. Lexis 22115, *7 (D.D.C. July 13, 1998).

### 3.    Compliance with the Subpoena Is Not Unduly Burdensome

Nexway has the burden to show undue burden.  To establish this, Nexway would have to

---

transcripts of recordings of test calls, and reports documenting the results of the test calls; and
J. Recordings of telephone conversations between consumers and any of the Tech Support Merchants.

[63] *Id*. at 3:
Document Request 11: All communications, including letters and emails that the Company or Nexway received from Visa, MasterCard, PayPal, any bank, or any Payment Processor relating to Chargebacks or Refunds;
Document Request 12: All documents the Company or Nexway AG reviewed, relied upon or that relate to the Company's or Nexway AG's Visa chargeback monitoring program, remediation plan dated on or about January 16, 2018, or any other remediation plan;
Document Request 13: All agendas, meeting minutes, memoranda, or other documents relating to meetings about the Company's or Nexway AG's Visa chargeback monitoring program remediation plan dated on or about January 16, 2018,  or any other remediation plan; and
Document Request 14: All documents, including emails, related to the February 8, 2019 letter sent to the Company from the Golden Gate Better Business Bureau.

show that compliance would threaten to disrupt its business unduly, or otherwise seriously hinder

its operations.  *See*, *e.g.*, *Texaco,* 555 F.2d at 882 (*en banc*); *FTC v. Invention Submission Corp.*,

965 F.2d 1086, 1090 (D.C. Cir. 1992), *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d. Cir. 1979).

Nexway cannot meet this burden.  Notably, Nexway has already produced the documents at issue

without raising an objection.

## IV.    NEXWAY HAS WAIVED PRIVILEGE

The Court should reject Nexway's attempt to shield unspecified documents from FTC

scrutiny based on a blanket claim of attorney-client privilege because Nexway has waived the

privilege, specifically as it relates to any documents shared or communications with juriste Mr.

Von Kroog.  Commission Rule 2.11 addresses inadvertent disclosures of privileged material as

follows:

> The disclosure of material protected by the attorney-client privilege or as work
> product shall not operate as a waiver if:
> (A) The disclosure is inadvertent;
> (B) The holder of the privilege or protection took reasonable steps to prevent
> disclosure; and
> (C) The holder promptly took reasonable steps to rectify the error, including
> notifying Commission staff of the claim and the basis for it.

16 C.F.R. § 2.11(d)(1)(i). This provision mirrors Federal Rules of Evidence 502(b), addressing

inadvertent disclosures.

Courts have held that the party asserting the privilege, even if disclosure of the

communication was inadvertent, bears the burden of establishing each of Fed. R. Evid. 502(b)'s

three elements. *Williams v. District of Columbia,* 806 F. Supp. 2d 44, 48 (D.D.C. 2011).

Moreover, courts have noted that the Advisory Committee Notes for Rule 502(b) set forth

several non-dispositive factors often used to evaluate whether an inadvertent disclosure has

effected a waiver of the privilege, including "the reasonableness of precautions taken, the time

taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness." *Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 32 F. Supp. 3d 35, 44 (D.D.C. 2014).  Indeed, the *Education Assistance Foundation* court held that interference with a government investigation impacted the fairness factor, ruling that a consequence of failing to expeditiously assert the attorney-client privilege under Fed. R. Evid. 502(b) is that a government investigation may irreparably rely on the protected information, and in that situation, the result is a waiver of the privilege. *Id*.

Nexway waived whatever privilege might have existed concerning communications and documents shared with Mr. Von Kroog.  Nexway produced more than 8000 documents, but has not shown that it reviewed any of them for the name or email address of Mr. Von Kroog, prior to or after producing them.  Instead, more than seven months after producing the documents and after receiving two letters noting that the FTC intended to use or make public some of the documents, Nexway vaguely identified a group of documents that might exist[64] that would be subject to the attorney-client privilege.  Yet, Nexway still has not identified any of these documents by bates number or provided a privilege log.  Moreover, when asked by the FTC to do so, Nexway refused and, instead, insisted the FTC provide it with either a list of the documents the FTC may rely on for legal theories or a preview draft of any proposed complaint against Nexway, so that Nexway could then select which documents it thought were privileged and should be returned.[65]

Nexway's actions demonstrate that it has not taken reasonable steps to prevent or rectify

---

[64] *See* Ex. 2 Brooke at ¶ 19; Ex. 31 April 19, 2021 Letter from Nexway.
[65] Ex. 2 Brooke at ¶ 27.

any inadvertent disclosure.  Nexway's production was made in an electronic format designed to

be easily loaded into an eDiscovery tool like Relativity (indeed, Nexway's production was likely

produced using such a tool).[66]  eDiscovery tools are commonly used by the government and law

firms to review large numbers of documents and include search and tagging functions that allow

a user to make numerous targeted searches over thousands of documents.[67]  The law firm

Nexway engaged is large and advertises that it advises eDiscovery companies.[68]  Yet, Nexway

evidently did not take the effort to use such a tool to search its production for communications

with Mr. Von Kroog either before or after its production.  In fact, it still refuses to identify any

documents other than bates Number 7247.[69]

Since Nexway has not shown that it took reasonable precautions to identify potentially

privileged documents, has not taken steps to rectify any error and due to issues of overriding

fairness, Nexway has waived any privilege it may have had to those documents.[70]

The right to claim a privilege is also waived if a privilege log is late and there is

gamesmanship.  *In re Chevron* F. Supp. 2d 170, 180-186 (S.D.N.Y 2010) .  Not until March 5,

2021, more than eight months after it completed its production of documents in response to the

CID, did Nexway for the first time claim that a document was covered by the attorney-client

privilege.  Since that time, it has provided no privilege log, despite repeated requests, submitted

---

[66] Ex. 4 Baldwin at ¶ 5.

[67] *Id*. at ¶ 4.

[68] Ex. 1 Tyndall at ¶ 22.

[69] Ex. 2 Brooke at ¶ 32.

[70] The only claim of privilege Nexway has asserted with respect to its document production is for communications with and documents provided Mr. Von Kroog. To the extent Nexway might later assert that additional privilege claims apply to documents it the produced in response to CID, those privilege claims would likely also waived.

no substantive basis for its assertion, and filed no protective order.  It has stonewalled the FTC's investigation, which interferes with the agency's law enforcement mission to protect the public from unfair and deceptive acts and practices.  By forcing this instant enforcement action, Nexway also burdens other public resources.   Such gamesmanship should not be tolerated.

## V.    NEXWAY'S PRIVILEGE CLAIM IS INVALID

Even if Nexway has not waived a claim of attorney-client privilege, Nexway has not established that the privilege applies.  It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability. *In re Subpoena Duces Tecum* 439 F. 3d 740, 750 (D.C. Cir 2006).  Nexway has utterly failed to meet it burden.  In particular, it has failed to prove basic elements of the privilege, namely that Mr. Von Kroog is a member of a member of a bar, or that in France, communications with Mr. Von Kroog would be protected.

Courts considering which country's law should apply to privilege claims when an individual resides in a foreign country typically start with a choice of law analysis.  In this case, the result is the same:  under both U.S. and French law the attorney-client privilege does not apply to a person who is not a member of a bar.

### 1.    Choice of Law

Nexway is a Delaware Corporation that does business in California.[71]  The documents are relevant to an ongoing investigation in the United States.  The communications Nexway claims to be privileged were shared with Oliver Von Kroog.  He is a juriste in Nimes, France.[72]  In

---

[71] Ex. 1 Tyndall at ¶ 10.
[72] *Id*. at ¶ 25.

assessing the potential availability of foreign privilege law governing communications with a foreign individual, most courts have engaged in a form of traditional choice-of-law contacts analysis. *Golden Trade S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 520 (S.D.N.Y. 1992) (internal cites omitted).[73]

"[A]ny communications touching base with the United States will be governed by the federal discovery rules." *Id.* Courts in this District have applied the "touch base" test. *See Odone v. Croda Intern. PLC*, 950 F. Supp. 10, 13 (D.D.C. 1997) *Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 65, 39 Fed. R. Serv. 2d 1262 (D.D.C. 1984); *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 391 (D.D.C. 1978).

Under the touch base test, a court applies "the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether . . . communications should remain confidential, unless that foreign law is contrary to the public policy of this forum." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 98-99 (2d Cir. 2020). *See also In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 391 (D.D.C. 1978).

Communications relating to legal proceedings in the United States, or that reflect the provision of advice regarding American law, 'touch base' with the United States and, therefore, are governed by American law, even though the communication may involve foreign attorneys or a foreign proceeding. *Golden Trade,* 143 F.R.D. at 520; *Odone,* 950 F. Supp. at 13. Communications that solely involve foreign proceedings, and an individual located in the country where the proceedings are taking place, do not touch base with the United States and are

---

[73] Under Federal Rule of Evidence 501, questions of privilege are "governed by the principles of common law." *Golden Trade* 143 F.R.D. at 521 (S.D.N.Y. 1992) (citing Fed. R. Evid. 501). "The 'common law' applied under Rule 501 includes 'choice of law' questions." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 97 (S.D.N.Y. 2002).

governed by foreign privilege law. *Golden Trade* at 520. If neither situation applies, a court

may look at a number of factors. *See VLT Corp v. Unitrode Corp.*, 194 F.R.D. 8, 16 (D. Mass.

2000) (The court identified the following factors in weighing the relative interests of the different

countries: "the parties to and the substance of the communication, the place where the

relationship was centered at the time of the communication, the needs of the international

system, and whether the application of foreign privilege law would be 'clearly inconsistent with

important policies embedded in federal law.").

Some courts applying the touch base doctrine have disaggregated the communications

according to whether they relate to U.S. legal proceedings versus foreign legal proceedings. *See,*

*e.g., Johnson Matthey, Inc. v. Research Corp.*, 2002 WL 1728566, *9 (S.D.N.Y. 2002); *In re*

*Ampicillin Antitrust Litigation*, 81 F.R.D. 377 at 394. Fortunately, the Court does not need to

engage in a choice of law analysis on a document by document basis in this case as <u>both</u> the U.S.

and French law are clear—communications with Mr. Von Kroog are not covered by the attorney-

client privilege in either country.

### 2.    No Privilege Under U.S. Law or French Law

#### a.    Mr. Von Kroog is Not a Member of a Bar

The general rule in the United States is that the person has to be a member of the bar of a

court in order for the attorney-client privilege to apply. *United States. v. United Shoe*, 89 F.

Supp. 357, 358 (D. Mass 1950); *In re Sealed Case* 737 F.2d 94, 98-99 (D.C. Cir. 1984).

Mr. Von Kroog is not a member of a bar in the United States[74] and is not a member of the bar in France.[75]  The FTC's investigation has shown that Mr. Von Kroog is instead a juriste.[76]  In France, a juriste is not admitted to a bar.[77]

Mr. Von Kroog is an in-house legal advisor (sometimes referred to in France as "in-house corporate counsel"); he is NOT an attorney—in the U.S. or France.[78]  The attorney-client privilege does not apply to communications with an in-house legal advisor in France who is not a member of a bar.  *Louis Vuitton Mallier v. Dooney & Burke, Inc.* 2006 U.S. Dist. Lexis 87096, 2006 WL 3476735 *56-59 (S.D.N.Y. Nov. 30, 2006) .The decision in *Louis Vuitton Mallier* is consistent with other cases that also held that the privilege does not apply to foreign lawyers who are not members of the bar.  *See, e.g., Reckitt Benchser Pharms. v. Reddy's Labs*, 2016 U.S. Dist. Lexis 201592 *6-11 (D. Del. 2016);  *Honeywell, Inc. v. Minolta Camera Co.,* 1990 US Dist. Lexis 5954 (D.N.J. May 15, 1990), 1990 WL 66182, at *2 (D.N.J. May 15, 1990); *Wultz v. Bank of China*, 979 F. Supp. 2d 479, 496 (S.D. N.Y. Oct. 25, 2013).[79]

---

[74] Ex. 1 Tyndall at ¶¶ 27-28. (Mr. Von Kroog is not a member of the bar in California, where Nexway is located.  His name does not show up anywhere on Martindale-Hubble, one source for locating attorneys in the US.)

[75] Ex. 3 Declaration and Expert Report of Alexander Blumrosen, Esq. ("Blumrosen") at ¶ 22.

[76] Ex. 1 Tyndall at ¶¶ 25-26; Ex. 21 Nexway Document pgs. 5-6.

[77] Ex. 3 Blumrosen at ¶¶ 10, 38, 65.

[78] *Id*. at. ¶¶ 10, 22-23.

[79] One district court case in Delaware holds that the privilege applies to a juriste, but the decision (1) runs counter to appellate court precedent requiring bar membership, and (2) has been criticized as incorrect by a later court decision also in Delaware, and (3) is based upon a false premise.  The case is *Renfield* where the court found that a juriste is the functional equivalent of in house counsel in the U.S. and the privilege should apply.  *Renfield Corp. v. E Remy Martin & Co, SA,* 98 FRD 442, 444 (D. Del. 1982).  However, the 3rd Circuit, where Delaware is located, has followed *United Shoe* and required that a person be a member of the bar for the privilege to apply.  *In re Grand Jury Investigations*, 599 F.2d 1224, 1233 (3rd. Circuit 1979). *See also Honeywell, Inc. v. Minolta Camera Co.,* 1990 WL 66182, at *2 (D.N.J. May 15, 1990) ("The specific holding of *Renfield* has not been adopted by the Third Circuit, nor has the functional equivalence rationale been applied as a general proposition.").  Moreover, a later decision from a

Nexway also cannot show that the attorney-client privilege applies to a juriste or in-house counsel, who is not a member of a bar. No law in France protects the secrecy of communications of a juriste or in-house counsel.[80] The attorney-client privilege only applies to an avocat, who is a member of a bar.[81] It is also settled law that in France, and throughout most of Europe, the attorney-client privilege does not apply to in-house corporate counsel. *Akzo Chemicals Ltd v. European Commission*, Case C-550/07-P (European Court of Justice Sept. 14, 2010) ("internal communications between in-house counsel and their companies' employees are not privileged").[82] Communications with a juriste about legal proceedings in European countries other than France are also not covered by the attorney-client privilege.[83]

There are reasons why the privilege does not apply to a juriste, including the juriste's lack of legal training, the inability of a bar to discipline the individual juriste, and the fact that a juriste acts as a company's employee and does not provide independent legal advice independent from their client.[84] In France, avocats must pass a difficult exam to get into law school, complete law school, pass a bar exam, and be admitted to a bar.[85] Only then can they appear in court.[86] Juristes, by contrast, are not members of a bar, and are not subject to bar rules and

---

Delaware district court found that the privilege did not apply to a foreign counsel, criticized *Renfield* and refused to adopt the functional equivalency test. *Reckitt Benchiser Pharms. v. Reddy's Labs*, 2016 U.S. Dist. Lexis 201592 *8–9. Furthermore, a juriste is not the functional equivalent of an in-house counsel in the United States. In-house counsel in the United States includes attorneys who have gone to law school, and passed bar exams, and have been admitted to a bar, and are subject to its ethical rules. A juriste, by contrast, is not a member of a bar, and is not subject to bar rules and disciplinary proceedings. *See* Ex. 3 Blumrosen at ¶ 65.

[80] *Id*. at ¶ 42.

[81] *Id*. at ¶¶ 38, 64.

[82] *Id*. at ¶¶ 11, 45.

[83] *Id*. at ¶ 47.

[84] *Id*. at ¶¶ 30-31, 38, 65.

[85] *Id*. at ¶¶ 29, 39, 65.

[86] *Id*. at ¶ 65.

disciplinary proceedings; and generally have studied law at a college or university, but have not

gone to law school.[87]  Additionally, in France, juristes are employees of the company for whom

they work, while avocats cannot be an employee of the client company.[88]  Thus, in the view of

French law, a juriste is not independent of the company, even when they are in-house counsel.[89]

> **b.    Nexway Has Not and Cannot Show a Reasonable Belief that the
>         Communications are Privileged Under US or French Law**

Faced with the reality that Mr. Von Kroog is a juriste and not a member of a bar,

Nexway's counsel has retreated to an argument that Nexway considered Mr. Von Kroog to be

their attorney and the privilege should apply.[90]  He has cited to a single district court case in

another district in an ill-fated attempt to support his position: *Gucci America, Inc. v. Guess?,*

*Inc., et al.*, 2011 US Dist. Lexis 15 (S.D.N.Y Jan. 3, 2011).

The Court in *Gucci* held that, notwithstanding the general rule that the attorney-client

privilege applies only to licensed attorneys, communications with non-attorneys could be

considered as privileged in limited circumstances in which the client "reasonab[ly] believe[s]

that the person to whom the communications were made was in fact an attorney." *Gucci* 2011

US Dist. Lexis 15 * 5.  The attorney in the *Gucci* case had been admitted to the California bar

and was still a member of the Central District of California and the Southern District of

California.  *Id. at* *8 - 10.[91]  However, he had moved to inactive status with the California bar.

*Id.* at * 8.

---

[87] *Id*. at ¶ 65.
[88] *Id*. at ¶¶ 37, 39, 65, 66.
[89] *Id*. at ¶ 66.
[90] Ex. 2 Brooke at ¶ 19.
[91] The court based its holding largely on the significant evidence Gucci submitted showing that Gucci objectively believed that their in-house counsel was admitted to the bar.  This included the

While the Court in *Gucci* did allow a public company to raise a reasonable belief argument, the case did not involve a juriste who had never been an attorney or member of a bar. Further, French law makes it clear that the privilege does not apply.[92]

Moreover, a later case in the same district as *Gucci* refutes Nexway's attempt to rely on a reasonable belief defense. In *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 265-68 (S.D.N.Y. 2013), the court analyzed a reasonable belief claim similar to Nexway's and found no privilege existed. The party in *Anwar* claimed that it had a "reasonable belief" that matters shared with their Dutch in-house counsel, an unlicensed attorney, would be protected by attorney-client privilege. *Id*. The *Anwar* court rejected the defense and ruled it was clear that, under Dutch law, no privilege attaches to communications with unlicensed in-house counsel; therefore, the party could not claim that it reasonably believed the communications were privileged under Dutch law. *Id*.

*Anwar* is on point. Unlike *Gucci*, Nexway has proffered no reasonable belief, let alone evidence, that communications with Mr. Von Kroog were protected by attorney-client

---

following: (1) six declarations from its present and former executives stating that they considered the in-house lawyer to be an attorney; (2) evidence the lawyer in question had routinely appeared in court and before administrative agencies on Gucci's behalf; and (3) evidence showing that Gucci had paid his California bar membership fees throughout his tenure as in-house counsel.

[92] Moreover, the policy behind the privilege also weighs in favor of not allowing Nexway to rely on it. Because the privilege obstructs the truth and because its benefits are, at best, indirect and speculative, it must be strictly confined within the narrowest possible limits consistent with the logic of its principle. *In Grand Jury Investigation* 599 F.2d 1224, 1235 (3rd Cir. 1979). *See also*, *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.* 5 F.3d 1508, 1514 (D.C. Cir. 1993); *In Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir. 1979). Prohibiting public corporations from raising a reasonable belief defense when it has communicated with a juriste does not hinder their ability to get confidential legal advice to comply with the law. They just have to consult with an avocat or a member of a bar in the United States, depending on which law applies.

privilege.[93]   Like Dutch law, no attorney-client privilege attaches to communications with an in-house counsel under French law.[94]   To date, counsel has only stated that Nexway considered him to be their counsel.[95]   Moreover, Nexway knew that Mr. Von Kroog was an in house counsel (not a French attorney)[96] and has provided no evidence that Mr. Von Kroog ever belonged to a bar.[97]   Indeed, it is well known in France that companies cannot claim that documents shared with juristes/in-house corporate counsel are privileged.[98]

Also, reliance upon a reasonable belief under *Anwar* applies only to excusable mistakes of fact, not a mistake of law.   The court in *Anwar* stated that "the reasonable belief exception applies only in situations where the client makes an excusable mistake of fact…Indeed, a client's beliefs, subjective or objective, about the law of privilege [do not] transform an otherwise unprivileged conversation into a privileged one".   *Anwar v. Fairfield Greenwich Ltd.*, 30 F.R.D. 117, 120, 2013 US Dist. Lexis 96721 * 26 (S.D.N.Y. July 2013) (citations omitted).   Nexway's ill-fated reasonable belief argument is premised upon, at best, a mistake of law as to whether the privilege applies to a juriste.   Thus, the reasonable belief defense does not apply.

Moreover, the better approach to analyzing the exception comes from another case in the same district as Gucci, which held that the reasonable belief exemption cannot be raised by corporations.   *Financial Tech, Int'l v. Smith*, 2000 U.S. Dist. Lexis 18220, *19-20 (S.D.N.Y. Dec. 19, 2000).   Nexway, Inc. is, of course, a corporation.[99]   The exemption may apply to

---

[93] Counsel's bare assertion is not sufficient to establish his client's belief.
[94] Ex. 3 Blumrosen at ¶ 42.
[95] Ex. 2 Brooke at ¶ 19.
[96] Ex. 1 Tyndall at ¶ 26; Ex. 21 Nexway Document.
[97] Ex. 2 Brooke at ¶ 30.
[98] Ex. 3 Blumrosen at ¶¶ 11 and 53-61.
[99] Ex. 1 Tyndall at ¶ 10.

individuals, but not to corporations. *Id*. Corporations are sophisticated entities that can determine whether someone is a member of a bar. *Id*. Nexway, Inc. was formerly a subsidiary of Nexway AG and is now a subsidiary of Nexway SAS. Nexway AG has a principal place of business in Paris, France when Nexway Inc. was a subsidiary, and Nexway SAS currently has a principal place of business in Paris, France.[100] Moreover, Mr. Von Kroog is in Nimes, France.[101] Nexway should be expected to know that, in France, there are no situations where a juriste/in-house counsel is a member of the bar and there is no attorney-client privilege for internal documents sent to a juriste/in-house counsel.[102] The status of juristes and the fact that no privilege applies to their communications is widely known and has been extensively covered by the French business press.[103]

Finally, Nexway cannot show that a reasonable belief exemption exists under French law. French law is code based.[104] There is no code provision that allows a company or individual to claim that the attorney-client privilege applies because they had a reasonable belief that an individual was an attorney.[105]

### VI.    ALTERNATIVELY, THE COURT SHOULD ORDER NEXWAY TO PROMPTLY PRODUCE A PRIVILEGE LOG AND SET UP A SCHEDULE TO DETERMINE WHETHER THE PRIVILEGE APPLIES TO ANY DOCUMENTS

For the above reasons, the Court can determine as a categorical matter that Nexway's privilege claim is invalid. But even apart from those considerations, Nexway still has failed to demonstrate that all the other necessary elements of attorney-client privilege are met:

---

[100] *Id*. at ¶ 11.
[101] Ex. 3 Blumrosen at ¶ 21.
[102] *Id*. at ¶¶ 11 and 53-61.
[103] *Id*. at ¶ 53-58.
[104] *Id*. at ¶ 24.
[105] *Id*. at ¶¶ 24, 62.

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*U.S. v. United Shoe*, 89 F. Supp. 357, 358 (D. Mass 1950); *In re Sealed Case* 737 F.2d 94, 98-99 (D.C. Cir. 1984). *See also Federal Trade Commission v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) ( attorney-client communications can have "multiple purposes" and still be privileged as long as legal advice was one of the significant purposes of the communications.).

The privilege does not apply, moreover, simply because an attorney was sent a document. *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 189 n.13 (D.D.C. 2014) (quoting *Minebea Co. v. Papst*, 228 F.R.D. 13, 21 (D.D.C. 2005)). And, the privilege does not apply when documents are shared with third parties.[106] *Teleglobe Communs. Corp. v. BSE, Inc.*,

---

[106] Some of the communications with Mr. Von Kroog also went to individuals at their Native and Lighthouse Capital email accounts. The Native SA and Lighthouse Capital, Ltd. appear to be separate corporations from Nexway. (*See*, Ex. 1 Tyndall at ¶ 29; Ex. 22 and 23.) As such, they are third parties and the privilege is waived even if the individuals who received the emails work at both companies. *In re WeWork Litig. Consol.* 2020 Del. Ch. Lexis 368 (Dec. 22, 2020).

493 F.3d 345, 361 (3rd Cir. 2007); *U.S. v. Philip Morris*, 2004 U.S. Dist. Lexis 27026 *15 (D.D.C. 2004).

Accordingly, if the Court determines that additional consideration of these elements is warranted, the FTC requests that the Court (1) set a short deadline of 14 days for Nexway to produce a complete and thorough log that complies with the CID instructions and FTC Rules, and (2) set up an expedited schedule for contesting any privilege claims, including an opportunity to argue that the privilege does not apply or that an exemption applies, with in camera review of documents, if necessary.

## VII.    CONCLUSION

For the reasons stated above, the Court should find that none of the documents produced by Nexway in response to the FTC's CID are privileged.

**FEDERAL TRADE COMMISSION**

James Reilly Dolan
Acting General Counsel

Michele Arington
Assistant General Counsel for Litigation

s/Russell Deitch

_____
Russell Deitch, Attorney
J. Ronald Brooke, Jr., Attorney
Federal Trade Commission
Washington, DC 20580
202-326-2585(Deitch)
202-326-3484 (Brooke)
rdeitch@ftc.gov
jbrooke@ftc.gov